UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACQUELINE D. WHITE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 1:14-cv-00804-JMS-DML |
| CAROLYN W. COLVIN Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Jacqueline D. White applied for disability insurance benefits from the Social Security Administration ("SSA") on July 20, 2011, alleging disability beginning June 20, 2008. [Filing No. 12-5 at 2.] Her claim was denied initially and on reconsideration, and a hearing was held before Administrative Law Judge T. Whitaker (the "ALJ") on December 17, 2012. [Filing No. 12-2 at 44-76.] On February 19, 2013, the ALJ issued an opinion concluding that Ms. White was not entitled to disability benefits. [Filing No. 12-2 at 27-39.] The Appeals Council denied her request for review on March 19, 2014, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 12-2 at 2-4.] Ms. White filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

**I.**
**BACKGROUND**

Ms. White was almost forty-six years old when she applied for disability benefits, alleging an onset date of June 20, 2008. [Filing No. 12-5 at 2.] Ms. White last worked in June 2008 for a temporary agency that contracted with public schools. [Filing No. 12-2 at 50.] In that capacity, she typically performed secretarial, office, and library assistant duties. [Filing No. 12-2 at 50.]

1

At the hearing, Ms. White alleged that she suffers from bilateral knee pain following replacement surgeries in May and June 2009, uncontrolled hypertension, and obstructive sleep apnea. [Filing No. 12-2 at 48.] She asserted that the resulting pain interferes with her ability to sleep, leading to significant fatigue that results in her inability to maintain full-time work. [Filing No. 12-2 at 48.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on February 19, 2013, concluding that Ms. White is not disabled. [Filing No. 12-2 at 27-39.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. White last met the insured status requirements of the Social Security Act on December 31, 2012. [Filing No. 12-2 at 29.] She further found that Ms. White had not engaged in substantial gainful activity[1] since her application date. [Filing No. 12-2 at 29.]

- At Step Two of the analysis, the ALJ found that Ms. White had the following severe impairments: obesity; osteoarthritis of the bilateral knees status post bilateral knee repair; history of bilateral pes anscrinus or bursitis; sleep apnea; hypertension; and history of chest pain. [Filing No. 12-2 at 29.]

- At Step Three of the analysis, the ALJ found that Ms. White did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 12-2 at 31.]

- The ALJ concluded that through the date of last insured, Ms. White had the residual functional capacity ("RFC") to lift/carry 20 pounds occasionally and 20 pounds frequently;

---

[1] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

stand and walk for 20 minutes each at one time, for a combined total of 2 hours per 8-hour day; and sit for 1 hour at a time, for a total of 6 hours per 8-hour day. [Filing No. 12-2 at 32.] As part of the RFC, the ALJ limited Ms. White to work that allows her to sit or stand alternatively and precluded her from operating foot controls; crouching; kneeling; crawling; or climbing ladders, ropes, stairs, or scaffolds. [Filing No. 12-2 at 32.] The ALJ also limited Ms. White to work where she would only have to occasionally balance, climb ramps, and stoop, but never repeatedly below the waist. [Filing No. 12-2 at 32.] Ms. White's work must not expose her to vibrations, unprotected heights, dangerous moving machinery, or slippery uneven walking surfaces. [Filing No. 12-2 at 32.] The ALJ also limited Ms. White to simple, routine, and repetitive tasks in a work-environment free from fast-paced production requirements. [Filing No. 12-2 at 32.]

- At Step Four of the analysis, the ALJ concluded that Ms. White was unable to perform any past relevant work. [Filing No. 12-2 at 38.]

- At Step Five of the analysis, the ALJ concluded that considering Ms. White's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. [Filing No. 12-2 at 38.] The ALJ specifically identified sedentary jobs such as order clerk, charge account clerk, final assembler, and system surveillance monitor. [Filing No. 12-2 at 39.]

- Based on these findings, the ALJ concluded that Ms. White was not disabled and, thus, not entitled to the requested disability benefits. [Filing No. 12-2 at 39.]

Ms. White requested that the Appeals Council review the ALJ's decision, but that request was denied on March 19, 2014, making the ALJ's decision the Commissioner's "final decision"

subject to judicial review. [Filing No. 12-2 at 2-4.] Ms. White now seeks relief from this Court. [Filing No. 1.]

## II.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last ... not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can

4

perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

The Court is mindful of the fact that Ms. White is representing herself *pro se* in this matter. That does not, however, alter the fact that this Court's role is limited to reviewing the ALJ's

5

decision, and making sure that the evidence that was before the ALJ supports that decision. A claimant representing herself still "must present arguments supported by legal authority and citations to the record." *Cadenhead v. Astrue*, 410 F. App'x 982, 984 (7th Cir. 2011) (citing *Correa v. White*, 518 F.3d 516, 517 (7th Cir. 2008)). "A generalized assertion of error is not sufficient to challenge an adverse ruling, and undeveloped or unsupported contentions are waived." *Cadenhead*, 410 F. App'x at 984 (citing *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001)).

Ms. White challenges the ALJ's adverse decision on multiple bases. [Filing No. 16.] First, she contends that the ALJ erred by making an adverse credibility finding. Second, Ms. White informs the Court that she was recently diagnosed with insulin-dependent diabetes and heart issues, including chest pain, constant shortness of breath, tremors, and shaking. Third, Ms. White challenges testimony from the vocational expert ("VE") on which the ALJ relied to conclude that jobs exist in significant numbers in the national economy that Ms. White could perform. The Court will address each of Ms. White's arguments, and the Commissioner's responses, in turn.

**A. Credibility**

Ms. White's primary argument challenges the ALJ's adverse credibility determination in her case. [Filing No. 16.] Ms. White contends that she did not exaggerate her subjective complaints of pain, stemming from her severe impairments, or the drowsiness that is a side effect of her medications. She questions her employability as a result of these conditions. [*See, e.g.*, Filing No. 16 at 1 ("[A]gain, I'm always sleepy, what employer hires someone who is forgetful, makes continuous mistakes, doesn't pay attention and is constantly having to take breaks because of pain, excess absenteeism?").]

6

In response, the Commissioner emphasizes that the ALJ did not ignore Ms. White's subjective allegations because she found that she could no longer perform her past relevant work and limited her to less than a full range of sedentary work. [Filing No. 20 at 2-3.] The Commissioner emphasizes that the ALJ was not required to prove that Ms. White was not disabled, and that the ALJ adequately supported her decision by pointing to objective medical evidence regarding Ms. White's normal gait and full range of motion, which Ms. White does not challenge. [Filing No. 20 at 4.] The Commissioner emphasizes the ALJ's reliance on the fact that no doctor, including Ms. White's treating physicians, indicated that she was unable to perform sedentary work. [Filing No. 20 at 4.]

In reply, Ms. White again emphasizes that she is not exaggerating and that "there is no reason to lie, this is my life." [Filing No. 21 at 3.] She again questions her employability based on the effects of her various medical conditions and side effects of her medication. [Filing No. 21 at 3.]

The ALJ's credibility determination is typically entitled to special deference. *Scheck*, 357 F.3d at 703; *see Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying"). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination

"must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The Court has reviewed the ALJ's decision in light of Ms. White's arguments and concludes that the adverse credibility determination is not patently wrong. Ms. White's subjective complaints fall into two categories—1) pain, and 2) fatigue and drowsiness. The ALJ credited Ms. White's subjective representations, at least in part, by finding that she can no longer perform her past relevant work. [Filing No. 12-2 at 38]; *see also Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985) ("When the ALJ found that Stephens could not do his old job, he credited the claims of limitations caused by pain."). Nevertheless, Ms. White argues that had the ALJ fully credited her subjective complaints, she would have found her to be disabled.

With regard to her complaints of knee pain, the ALJ detailed Ms. White's history of treatment at length. [Filing No. 12-2 at 33-35.] The ALJ noted that Ms. White underwent a total arthroplasty of the left knee in May 2009 and that the medical records showed "increasingly good relief of her symptoms" after that. [Filing No. 12-2 at 33 (citing Filing No. 12-7 at 65).] The ALJ detailed complications that Ms. White suffered after she underwent arthroscopic surgery of the right knee in June 2009, but also noted the progress her treating physician observed in June 2010. [Filing No. 12-2 at 33-34 (citing Filing No. 12-7 at 58); Filing No. 12-7 at 43 (treating physician report noting that Ms. White "has had gradual improvement of her symptoms. Overall she has been ambulatory and really does not have any significant problems. Her exam shows excellent motion about both knees.").] The ALJ recognized that Ms. White complained of continued knee pain in 2012 but pointed out that Ms. White had admitted that "she gave up strengthening exercises" and "was counseled on weight loss, as her obesity was increasing her symptoms." [Filing No. 12-2 at 34-35.] Ms. White only sought treatment for knee pain once after that, and the

8

physical examination did not support significant deficits. [Filing No. 12-2 at 35.] The ALJ also noted that the medical evidence showed that Ms. White had a normal gait and full range of motion in both knees. [Filing No. 12-2 at 36 (citing Filing No. 12-12 at 24-30).]

Ms. White's brief focuses primarily on the fatigue and drowsiness she experiences and how she believes that would preclude her from working. [Filing No. 16.] Ms. White testified at her hearing that she gets approximately five to six hours of sleep per day, primarily during daytime hours. [Filing No. 12-2 at 57-58.] The ALJ pointed to Ms. White's use of a CPAP machine for sleep apnea and noted that "[f]or the most part, the claimant reported benefit from the CPAP." [Filing No. 12-2 at 33.] The ALJ also pointed out that there was "no evidence in the medical records of significantly limiting side effects with regard to [Ms. White's] medication." [Filing No. 12-2 at 36.]

Ms. White appears to believe that the ALJ outright rejected her subjective complaints of pain and fatigue. After reviewing the ALJ's opinion, however, it is clear that the ALJ credited many of Ms. White's subjective complaints and tailored Ms. White's RFC to account for various limitations. For example, to account for Ms. White's knee pain, the ALJ restricted her RFC to "less demanding work" that reflected the amount of standing and lifting that Ms. White testified she could do. [Filing No. 12-2 at 36; Filing No. 12-2 at 58.] With regard to fatigue, the ALJ noted that although there was "no evidence" of significantly limiting side effects from Ms. White's medication, "[r]egardless, I have restricted the claimant from [listed work hazards] to allow for any drowsiness and sleepiness that she might have during the day," limited her to "simple, routine, and repetitive tasks," and precluded any "fast-paced production requirements." [Filing No. 12-2 at 36.] The ALJ added additional RFC restrictions "due to the impact of her physical symptoms such as pain and fatigue upon her concentration, persistence and pace." [Filing No. 12-2 at 36.]

9

The ALJ also pointed out, and Ms. White does not challenge, that no doctor ever indicated that she was disabled or unable to perform sedentary work. [Filing No. 12-2 at 37.]

It is clear from the evidence that was before the ALJ that Ms. White suffers from pain, fatigue, and drowsiness. The Court concludes, however, that the ALJ adequately detailed the evidence before her and built a logical bridge from that evidence to her conclusions regarding Ms. White's functional limitations and the resulting RFC. The ALJ credited many of Ms. White's representations and tailored the RFC to account for various functional limitations, but ultimately concluded that Ms. White could do limited sedentary work. *See, e.g.*, *Stephens*, 766 F.2d at 288 ("Yet the medical evidence also supports a conclusion that Stephens's problems are much less serious if he need not bend, push, flex, or lift. Thus the ALJ was entitled to conclude that Stephens can do sedentary work. This is a logical path to a conclusion supported by substantial evidence."). This Court defers to the ALJ's adverse credibility determination unless it is patently wrong. *Shideler*, 688 F.3d at 310-11. That is not the case here.

### B. New Diagnoses

Ms. White relies on recent diagnoses of insulin-dependent diabetes and heart issues, including chest pain, constant shortness of breath, tremors, and shaking to support her argument that she is disabled. [Filing No. 16 at 1-2.] She also asserts that her impairments have made her "irritated and angry all the time." [Filing No. 16 at 1.]

In response, the Commissioner points out that Ms. White's insured status lapsed on December 31, 2012. [Filing No. 20 at 6.] Thus, the Commissioner emphasizes that Ms. White needs to show that she was disabled prior to that date. [Filing No. 20 at 6.] The Commissioner also emphasizes that Ms. White testified at the ALJ hearing that at the time of that hearing she had not been diagnosed with diabetes, that she never asserted functional limitations from social

difficulties, and that her counsel conceded that there was no evidence of diabetes or congestive heart failure in the evidence. [Filing No. 20 at 5-6 (citing Filing No. 12-2 at 64-65; Filing No. 12-2 at 68).]

In her reply, Ms. White challenges the effectiveness of counsel who represented her before the ALJ. [Filing No. 21 at 1-2.]

The mere "diagnosis of an impairment does not establish the severity of the impairment." *Flint v. Astrue*, 2013 WL 30104, *5 (S.D. Ind. 2013) (citing *Estok v. Apfel*, 152 F.3d 636, 639-40 (7th Cir. 1998)); *see Stanley v. Astrue*, 2012 WL 1158630, *8 n.8 (N.D. Ind. 2012) ("[T]he diagnosis of an impairment does not alone establish its severity and its resulting limitations."). Instead, the functional limitations of the impairments are key in assessing disability. *See* 20 C.F.R. § 404.1545 (noting that the RFC accounts for "physical and mental *limitations*" from the impairments) (emphasis added). A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period. *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). Failure to specifically cite to evidence in the record or develop an argument waives the issue. *See, e.g.*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim."); *Powell v. Colvin*, 2014 WL 69775, at *5 (S.D. Ind. 2014) (finding waiver when claimant "makes no attempt to cite to the record").

At her hearing, Ms. White testified that she had not been diagnosed with diabetes. [Filing No. 12-2 at 65.] Additionally, her counsel conceded that there was no evidence of congestive heart failure. [Filing No. 12-2 at 68.] While Ms. White criticizes this concession, she has not pointed the Court to any evidence in the record before the ALJ supporting a congestive heart failure diagnosis or any resulting functional limitations that existed at that time. She also has not pointed

11

the Court to any evidence in the record before the ALJ of social difficulties that would support additional work limitations. Thus, these issue are waived. If Ms. White has developed additional impairments since her application for benefits at issue in this case, her proper recourse is not a remand of this action, but rather to file a new application for benefits. *See Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1989)* ("If Kapusta has developed additional impairments since his first application for benefits, he may file a new application."); *Bowen v. Astrue*, 2007 WL 1455892, at *10 (S.D. Ind. 2007) (proper recourse for evidence of claimant's current condition and not her condition at the time her application was under consideration by the Social Security Administration is to file a new application of benefits). The Court makes no representations regarding whether a new application would have merit, especially given the Commissioner's assertion that Ms. White's insured status lapsed on December 31, 2012.

### C. VE Testimony

Ms. White asserts that the ALJ erred by relying on testimony from the VE regarding the availability of jobs that existed in significant numbers that Ms. White could perform. [Filing No. 16 at 2.] She claims that in response to questions regarding the availability of jobs for Ms. White if she needed to take more than the assigned breaks, the VE testified that she did not know. [Filing No. 16 at 2.]

In response, the Commissioner notes that Ms. White did not object to the VE's qualifications at the hearing. [Filing No. 20 at 6.] The Commissioner characterizes Ms. White's challenge as "ambiguous" and contends that it "collapses into a claim that the ALJ should have credited her subjective statements about needing to take breaks during the day." [Filing No. 20 at 6.]

12

In reply, Ms. White again claims that at the hearing, the VE testified in response to a question about additional breaks that she was unsure how it would impact the number of jobs available for Ms. White with her limitations. [Filing No. 21 at 3.]

Ms. White does not provide the Court with a citation to the portion of the VE's testimony that she challenges. Therefore, she has waived this argument. Nevertheless, the Court carefully reviewed the VE's testimony but was unable to locate any portion where the VE expresses uncertainty regarding the existence or availability of jobs available for Ms. White in response to questions. Thus, it appears that Ms. White either misunderstood or is misremembering the VE's testimony from the hearing. Accordingly, the Court rejects any challenge to the VE's qualifications or testimony.

**D. Result**

Ms. White's frustration with her medical impairments and the ALJ's decision are apparent from her briefs to the Court. While the Court is sympathetic, it is "limited by its standard of review and the legal definition of 'disability' under the Social Security Act."[2] *Estok*, 152 F.3d at 642. The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. App'x 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.*

---

[2] Ms. White asserts in her reply brief that in a disability permit application to the BMV, her doctor represented that her disabilities are "permanent." [Filing No. 21 at 3.] While this may be true, the standard for receiving a disabled permit from the BMV is different than the stringent standard for receiving disability benefits as a result of the functional limitations from identified impairments.

Ms. White has presented no reason for the Court to reverse the decision of the ALJ based on the evidence in the record at that time. Again, if Ms. White received new diagnoses and developed additional functional limitations since her application for benefits at issue in this case, her proper recourse is to file a new application for benefits. See *Kapusta*, 900 F.2d at 97. The Court makes no representations regarding whether a new application would have any merit, especially given the Commissioner's assertion that Ms. White's insured status lapsed on December 31, 2012.

### IV.
#### CONCLUSION

The Court can find no legal basis presented by Ms. White to overturn the Commissioner's decision denying her disability benefits. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

March 9, 2015

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via US Mail:**

JACQUELINE D. WHITE
3325 N. New Jersey St.
Indianapolis, IN 46205

**Electronic Distribution via CM/ECF:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov